[CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
NOV 23 2011
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK]

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| SKYLAR M. HARRIS, | CASE NO. 5:11CV00041 |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | |
| Defendant. | By: B. Waugh Crigler U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's October 1, 2009 application for Supplemental Security Income ("SSI") is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the plaintiff's motion for summary judgment, REVERSING the Commissioner's final decision, and ENTERING final judgment in favor of the plaintiff.

Plaintiff was born on September 6, 1991 with severe cerebral palsy and seizures. (R. 14, 22.) As a result of her disability, she is eligible for the Virginia Birth-Related Neurological Injury Compensation Program's Wage Benefit ("Virginia Compensation Benefits"). (*Id.*) Because plaintiff would be found to qualify as an "incapacitated person" under Va. Code § 37.2-1000 et seq., she could neither receive nor manage any compensation benefits to which she was entitled under Virginia law. Her parents, then sought to qualify as guardians and conservators of

her estate under Va. Code §§ 37.2-1001-1011. Her parents also were rightly informed that, in order for certain benefits received under the Virginia Compensation Benefits Act to be excluded as a resource for SSI purposes, they would need to establish an OBRA-93[1] trust meeting the requirements of the Social Security Act. (*Id.*)

The parents then embarked on efforts both to qualify as co-guardians and co-conservators and to establish the qualifying irrevocable trust into which the Virginia Compensation Benefits automatically would be placed. On November 19, 2009, an Order was entered by the Circuit Court of Augusta County Virginia declaring plaintiff incapacitated and appointing her parents as co-guardians and co-conservators. (R. 93-97.) On the same date, The Skylar Marshall Harris Irrevocable OBRA Trust ("Trust") was executed designating the plaintiff as the beneficiary and her parents as both grantors and trustees. (R. 14, 60-70.) There is no dispute on this record that the Trust would be funded by the Virginia Compensation Benefits, and the parents executed an agreement essentially mandating the payment of those benefits into a bank account in the name of the Trust. (R. 60-77.)

On October 1, 2009, plaintiff submitted applications for a period of disability and disability insurance benefits and SSI. (R. 13.) Plaintiff alleged a disability onset date of birth, September 6, 1991. (*Id.*) Plaintiff's application for disability insurance benefits was denied because plaintiff had never worked and had no quarters of coverage in order to attain insured status for disability insurance benefits. (*Id.*) Plaintiff's application for SSI was granted, effective on the filing date. (*Id.*) Even so, the Social Security Administration ("SSA") initially

---

[1]The Omnibus Budget Reconciliation Act of 1993 (OBRA-93) amended Social Security Act § 1917 (42 U.S.C. § 1396p) and established rules for treating trusts for purposes of Medicaid eligibility. (R. 14 n. 2.)

2

determined that beginning in December 2009, plaintiff's resources exceeded the limitations for receiving SSI benefits due to funds she received from the Virginia Compensation Benefits program. (*Id.*) Plaintiff appealed to an Administrative Law Judge ("Law Judge") who held a hearing on July 1, 2010. (R. 106-127)

On July 30, 2010, the Law Judge issued a lengthy and detailed decision which was fully favorable to plaintiff on her claim for SSI benefits. (R. 13-21.) He found that the Trust met the requirements of a special needs trust under the Social Security Act. (R. 20.) In addition, he rejected the various and alternative contentions offered by the SSA for denying the claim. (*Id.*) Specifically, he noted that, while the Virginia Compensation Benefits might not be excludable if paid directly to the plaintiff, they became excludable when placed in the Trust which met the requirements of the Social Security Act. In other words, he found that, though not excludable if paid directly to a recipient, payment of non-excludable funds into a qualifying trust made them excludable. (R. 21.) He reasoned further that Congress intended for individuals with disabilities who put their assets into a properly established trust to remain eligible for other federal benefits, including SSI. (*Id.*) Thus, he concluded that plaintiff's Virginia Compensation Benefits was an excludable resource and income for purposes of plaintiff's eligibility for SSI benefits because the funds were placed in a special needs trust. (*Id.*)

On March 4, 2011, the Appeals Council vacated the Law Judge's decision and denied the claim for SSI benefits. (R. 7-9.) The Appeals Council found that plaintiff was not eligible for SSI because of the income she received from Virginia Compensation Benefits. (R. 8-9.) Instead of relying on the terms of the trust, the Appeals Council relied on ¶ 11 of the preamble or introduction to an Order entered by the Circuit Court of Augusta County Virginia appointing

plaintiff's parents to serve as co-guardians and co-conservators to find the Trust was not an irrevocable assignment of the Virginia Compensation Benefits. (R. 8-9.) In ¶ 11 of the preamble to the actual imperative provisions of the Order, the Circuit Judge observed, "It is appropriate for any Conservator appointed for Skylar to be granted discretion to transfer funds received from the Virginia Birth-related Neurological Injury Compensation Program into the OBRA Trust established by Petitioners." (R. 95.) Plaintiff then filed the instant civil action seeking review of the Commissioner's final decision.

In a brief filed in support of her motion for summary judgment, plaintiff argues that the Commissioner's decision that she was not eligible for SSI because of the income she received from Virginia Compensation Benefits should be reversed. (Pl's Brief, pp. 3-7.) Specifically, she contends that the payments, which are paid directly into the bank account of the OBRA trust, are excludable as resources and income for SSI eligibility purposes. (Pl's Brief, p. 5.) Plaintiff asserts that there is no statute or regulation requiring that a claimant have no discretion but to irrevocably transfer an asset into a special needs trust before that asset will be excluded from being counted for purposes of SSI eligibility. (*Id.*) Moreover, plaintiff argues that the Commissioner's reliance on the POMS is misplaced. (Pl's Brief, pp. 5-6.) The undersigned agrees on all points.

The issue here is not whether the Virginia Compensation Benefits are income, because they are, but whether they are excludable from consideration as income because they have been irrevocably assigned into an otherwise qualified OBRA Trust. Income is defined as "anything you receive in cash or in kind that you can use to meet your needs for food and shelter." 20 C.F.R. § 416.1102. There is a special set of rules which apply to income placed in a trust.

4

Revocable trusts are considered resources. 42 U.S.C. § 1396p(d)(3)(A). On the other hand, irrevocable trusts are deemed resources to the extent that payment from the trust could be made to or for the benefit of the individual. *Id.* at 1396p(d)(3)(B). These general trust rules are not applicable to several specific trusts, including a special needs trust. *Id.* at 1396p(d)(4). In order to qualify as a special needs trust, a trust must: (1) contain the assets of a disabled person under age sixty-five; (2) be established for the benefit of the disabled person by a parent, grandparent, legal guardian, or a court; and (3) distribute remaining trust amounts to the State up to the amount equal to the total medical assistance paid on behalf of the individual. *Id.* at 1396p(d)(4)(A). The parties do not dispute the fact that the OBRA trust created by plaintiff's parents meets the requirements of a special needs trust.

Congress determined that the general trust rules do not apply to special needs trusts, but Congress did not determine what rules do apply. This issue was addressed by the Second Circuit Court of Appeals in *Wong v. Doar*, 571 F.3d 247 (2d Cir. 2009). In *Wong*, a special needs trusted was created for a permanently disabled Medicaid recipient. *Id.* at 250, 253-254. The Department of Health and Human Services' ("HHS") and Centers for Medicare and Medicaid Services ("CMS") issued an informal rule in their State Medicaid Manual which required that income placed in a special needs trust be considered for determining the benefits due a Medicaid-eligible individual. *Id.* at 250. The rule effectively prevented Medicaid recipients, such as Wong, from using a special needs trust to shelter Social Security Disability Insurance ("SSDI") income from some certain Medicaid eligibility determinations. *Id.* Wong challenged the rule on the basis that it conflicted with the language of 42 U.S.C. § 1396p(d). *Id.* Specifically, Wong argued that the provision of (d)(4) that the rules "in this subsection shall not

5

apply" was a statement of Congress's intent that income placed in a special needs trust not be counted toward eligibility. *Id.* at 256.

The Second Circuit rejected Wong's reading of § 1396p(d). *Id.* at 256. The Court held that subparagraphs (d)(1) and (d)(4) together establish two groups of trusts: those trusts to which (d)(3) applies and those to which it does not apply. *Id.* The statutory command that (d)(3) "shall not apply" to the trusts provided for in (d)(4) was viewed as not providing guidance as to the rule applicable to (d)(4) trusts. *Id.* at 257. Thus, the Court deferred to the State Medicaid Manual to fill the "gap" left by Congress. *Id.*

Here, as in *Wong*, § 1396p(d)(4) applies to exempt special needs trusts from the rules set forth in (d)(3), but it is silent regarding how such trusts should be treated in assessing SSI eligibility. Just as the HHS filled in the gap with its State Medicaid Manual in that case, the SSA has attempted to fill in the gaps here with the certain provisions of the Program Operations Manual System ("POMS")[2].

The applicable POMS provides:

> A legally assignable payment (see SI 01120.200G.1.c for what is *not* assignable), that is assigned to a trust, is income for SSI purposes *unless* the assignment is irrevocable. For example, child support of alimony payments paid directly to a trustee as a result of a court order, are not income. If the assignment is revocable, the payment is income to the individual legally entitled to receive it.

POMS SI 01120.200G.1.d (emphasis in original).

---

[2]POMS represents the Commissioner's interpretation of the governing statutes and regulations. *See Wilson v. Apfel*, 81 F.Supp. 2d 649, 653 (W.D.Va. 2000). The POMS is entitled to some deference because it represents the Commissioner's interpretation of the governing statutes and regulations. *Id.* The POMS do not rise to the level of statutory, rule or decisional precedence.

6

The most interesting thing about this case is that, on its face and by the application of the plain provisions of both the Social Security Act and the regulations, the Trust in this case qualifies because, by its terms, every qualifying criterion of 42 U.S.C. § 1396p(d)(4) meticulously has been set forth in the terms of the document, even the required reversion provisions should plaintiff die before age sixty-five. (R. 60-73.) However, the Commissioner has seized on the language of ¶ 11 of the November 19, 2009 Order entered by the Circuit Court for the County of Augusta appointing the parents as co-guardians and co-conservators as a substitute for the informal rules set forth in State Medicaid Manual in *Wong* in reaching the conclusion that the Trust is not irrevocable. In other words, the Commissioner is of the belief that under ¶ 11 of the preamble to the court's Order, the parents, as co-guardians and co-conservators are "**granted the discretion** to transfer funds received from the Virginia Birth-Related Neurological Injury Compensation Program **into** the OBRA Trust established by the Petitioners." (R. 95) (emphases added).[3] Therefore, the Commissioner asserts that, under the POMS, the payments into the trust were income. The undersigned disagrees for several reasons.

First, the role of the Virginia Circuit Court in the process merely was to enable and oversee the administration or management of the estate of a person who was determined to be an "incapacitated person" under Virginia law. Va. Code §§ 37.2-1000-1001. Nothing in the Virginia statute pertained to entitlement to State or federal funds or the form in which the funds needed to be received in order to be excludable income under the Social Security Act. Here,

---

[3] The Order further states: "The Conservators . . . **shall have the authority** to transfer funds payable to Skylar Marshall Harris from the Virginia Birth-Related Neurological Injury Compensation Program, into the OBRA trust dated November 19, 2009, established by the Petitioners." (R. 96) (emphasis added). However, the fact that the guardians or conservators are granted discretion on how the trust funds are applied to the needs of the ward does not disqualify the trust.

7

Skylar Marshall Harris was found incapable of administering any funds to which she was otherwise entitled under the Virginia Compensation Benefits with or without a trust. Under Virginia law, the State court serves the purpose of assuming jurisdiction over such an "incapacitated person" and both qualifies and appoints guardians and conservators who, essentially, stand in her shoes and are accountable to the court for the receipt and distribution of funds that will serve to care for her special needs.

Second, the language set forth in ¶ 11 of the preamble to the court's Order to is precatory, not imperative. (R. 93-95.) The imperatives of the Order are set forth in Paragraphs A-H. They grant to the guardians and conservators the powers authorized by Virginia law to discharge their duties on behalf of their ward, including the power to place the funds Skylar would receive from the Virginia Compensation Benefits into the Trust. (R. 96-97.) Without first being granted the power by the court to do so, the Trust could not be established for Skylar, as an "incapacitated person." In other words, the parents were appointed to act on her behalf in establishing the Trust.

Third, the Trust, itself, plainly and meticulously tracks all the provisions that are required under Social Security Act in order to qualify the proceeds as excludable income. (R. 60-69.) It mandates that the Virginia Compensation Benefits funds be placed into the Trust under Schedule A solely for Skylar's benefit and subject to all the reporting and accountability provisions of State and federal law. (R. 71-73.) The precatory language set forth in the preamble to the imperative provisions of the November 19, 2009 Order did not render the income from the Virginia Compensation Benefits countable, as opposed to excludable, under federal law.

8

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the plaintiff's motion for summary judgment, REVERSING the Commissioner's final decision, GRANTING judgment to the plaintiff, and REMOVING this action from the active docket of the Court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ 
U.S. Magistrate Judge

11/23/11
Date